# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**USMAN JALLOH**
**5800 Annapolis Road #801**
**Bladensburg, MD 20210**
        **Plaintiff**

**v.**                                    **Civil Case No.**

**OFFICER ROBERT C. UNDERWOOD**
**6th District**
**5002 Hayes Street, N.E.**
**Washington, D.C. 20019**

**OFFICER PHILIP TRIDICO**
**6th District**
**5002 Hayes Street**
**Washington, D.C. 20019**

**SGT ARTHUR KIMBALL**
**3rd District**
**1620 V Street, N.W.**
**Washington, D.C. 20009**

**DISTRICT OF COLUMBIA**
1350 Pennsylvania Avenue, N.W.
Washington, D.C. 20001
Serve: Mayor Muriel Bowser
      441 ONE JUDICIARY SQUARE
      WASHINGTON, D, C. 20019


Serve: D.C. ATTORNEY GENERAL
      441 ONE JUDICIARY SQUARE
      WASHINGTON, D.C. 20019

**OFFICER SEAN MILLER**
**Prince George's County Police**
**District III**
**7600 Barlow Road**
**Landover, MD 20785**

**OFFICER THOMAS ANDERSON**
**Prince George's County Police**
**District III**
**7600 Barlow Road**
**Landover, MD 20785**
        **Defendants**
_____/

## COMPLAINT

### (JURISDICTION)

1.      This Court has jurisdiction pursuant to 28 U.S.C. 1331, 1343(a) (1-4); 42

U.S.C. 1983, and the Fourth and Fourteenth Amendments to the Constitution.

### (PARTIES)

2.      Plaintiff Usman Jalloh (Jalloh) is a citizen of Maryland residing at 5800

Annapolis Road, #810, Bladensburg, MD 20710.

3.      Defendant Robert Underwood (Underwood) is a member of the District of

Columbia Metropolitan Police Department and was, at all times relevant to this

Complaint acting under color of law and within the scope of his employment with

the MPD stationed at the 6th District.

4.      Defendant Philip Tridico (Tridico) is a member District of Columbia

Metropolitan Police Department and was, at all times relevant to this Complaint

2

acting under color of law and within the scope of his employment with the MPD, stationed at the 6th District.

5.      Defendant Sgt. Arthur Kimball  is a member District of Columbia Metropolitan Police Department and was, at all times relevant to this Complaint, stationed at the 3rd District.

6.      Defendant Sean Miller (Miller) is a member of The Prince George's County, MD Police Department and was, at all times relevant to this Complaint, stationed at District III of the Department acting within the scope of his employment and under color of law.

7.      Defendant Thomas Anderson (Anderson) s a member of The Prince George's County, MD Police Department and was, at all times relevant to this Complaint, stationed at District III of the Department acting within the scope of his employment and under color of law.

8.      Defendant District of Columbia is a municipal corporation capable of suing and being sued.

## **FACTS**

9.      Paragraphs 1 through 8 are incorporated by reference herein as though fully set forth.

10.     On November 13, 2013, Plaintiff Usman Jalloh (hereafter Jalloh), at approximately 4:30 p.m., was parked at Quarles Street and 49th Street, N.E. by the D.C. Recreation Center.

11.     Jalloh, while waiting for his nephew to leave the Center, was approached by Defendant Underwood who told him he could not legally park at that location.

12.     Underwood drove off in his cruiser, but turned around, came back and pulled his cruiser behind Jalloh's van.

13.  Jalloh had trouble starting his vehicle ( a rented ice cream van) because of a faulty ignition switch.

14.     As Jalloh managed to get his vehicle started he saw in his rear view mirror, Underwood approaching.

15.     Underwood stood at the serving window and said "[D]idn't I tell you to move" or words to that effect.

16.  Jalloh then drove off and made a left turn onto Quarles Street, a right turn on Eastern Avenue and a left turn onto a street believed to be Leroy Gorman Street.

17.     At this time, Jalloh noticed a police vehicle behind him driven by Underwood with Defendant Phillip Tridico as a passenger.

18.  Underwood and Tridico were on their police radio with their supervisor discussing whether to follow Jalloh into Prince George's County.

4

19.     Tridico told the supervisor that when Jalloh was leaving his parking place he intentionally turned his van to the right and struck Underwood, and that Underwood was bleeding.

20.     Jalloh made a left turn onto Sheriff Road at which point Underwood turned on his lights having been told to apprehend Jalloh even if Jalloh was in Prince George's County.

21.     Jalloh then attempted to pull over and put his turn signal on but there were two cars in the lane to his right.

22.   The cars, instead of driving by slowed down to let Jalloh into the right lane.

23.     At that point, Jalloh noticed that Underwood had sped up, crossed into the traffic lane going in the opposite direction, then sped in front of Jalloh.

24.   One of the officers was pointing a gun at Jalloh causing him to fear being shot.

25.     Jalloh, in fear for his life, moved to the right lane and made a right turn at Addison Road.

26.     Jalloh made a left turn onto 60th Place and right turn back onto Sheriff Road.

27.   Jalloh then stopped his van by a large building where there were some citizens present in order to protect himself from being killed.

28.     Underwood got out of his vehicle and walked toward Jalloh's van with his gun pointed at Jalloh.

29.     At this time, other officers had arrived on the scene including Prince

George's County officers Anderson and Miller.

30.     Jalloh opened the driver's side door and was yanked out of his van by

Underwood, was punched by Underwood, thrown to the ground, punched and

kicked by Underwood and Tridico and Prince George's County officer Miller.

31.     While this was going on, defendant Kimball arrived and began pounding

Jalloh's head into the pavement saying "you injured my buddy."

32.     When Jalloh denied that he had injured Underwood, Kimball said "shut up

you African bitch," and stomped on Jalloh's mouth.

33.     Underwood stood over Jalloh and said "you got what you deserve," and then

punched Jalloh in his temple and kicked him in his side.

34.     Jalloh lost consciousness for a period of time and then became aware that he

was handcuffed and was being dragged across the pavement by Kimball who

slammed Jalloh's face in the pavement several times..

35.      Neither Defendant Anderson or any other officer present made any attempt

to intervene and stop the beating of a helpless, unarmed, innocent man, who had

put up no resistance and was not a threat to anyone.

36.     Jalloh was placed in Anderson's cruiser, became dizzy and fell asleep.

37.     When Jalloh awoke in Anderson's cruiser all officers except Anderson had

left the scene, and Anderson told him he could go.

38.    Jalloh who was dizzy and in pain asked Anderson to help him to his vehicle, but Anderson refused.

39.    At no time had any medical assistance been offered to Jalloh by Anderson or any other officer present though Jalloh had been badly beaten and was in need of it.

40.    The next day, Jalloh went to the emergency room at room at Doctor's Hospital where he was diagnosed as having a concussion and abdominal contusions and was given Percocet and discharged.

41.    Because of being kicked in the mouth by Kimball, and punched by other defendants, Jalloh required significant dental work and treatment which has continued to this day.

39.    While Kimball was brutalizing Jalloh, none of the other defendant officers intervened to stop Jalloh from being injured.

40.    After the defendant officers stopped beating Jalloh, an ambulance arrived.

41.    Underwood got in it claiming to have been assaulted and injured by Jalloh while he and the other officers laughed and joked about it..

42.    Medical records for Underwood indicate that he was found to have sustained a bruised knuckle.

43.    Said bruised knuckle was most likely the result of Underwood punching Jalloh in the face several times with great force.

44.     Approximately five days after he was beaten, Jalloh reported the incident to Prince George's County officials and to D.C. Police Department officials.

45.     Both times, Jalloh was told that there was no record of the incident.

46.     Jalloh then submitted a complaint to MPD Internal affairs and also showed them an Instagram video he had received.

47.     On or about November 25, 2013, Jalloh, who had been experiencing severe pain in the area of his ribs, decided to go back to the ER at Doctor's Hospital.

48      However Jalloh received a phone call from his son stating that Marshall's in body armor accompanied by helicopters had forcibly entered in his son's house, his cousin's house and had gone to his job looking to arrest him.

49.     Jalloh, despite the pain he was in turned himself in to the D.C. MPD.

50.     Jalloh was held in custody for approximately 26 hours.

51.  Upon being released Jalloh returned the emergency room where he was diagnosed as having a broken rib.

52.  Jalloh was charged with Assaulting a Police Officer-Armed (hereafter APO) and Evading Arrest *inter alia*.

53.     Jalloh was placed under house arrest for 7 months and had to wear an ankle bracelet.

54.     As a result Jalloh was unable to work and had to apply for welfare assistance.

55.    After approximately 18 months all charges against Jalloh were dismissed by the Court.

56.    Despite the significant evidence of lying about the beating and arrest by the defendant officers, physical evidence that Underwood was lying about the assault and was not injured, despite the significant injuries suffered by Jalloh from the beating, and the failure of the defendant officers to offer medical assistance to Jalloh and transport him to a hospital as they were duty bound to do, none of the officers have been disciplined.

56.  Indeed MPD Internal Affairs found no violation of procedure by the defendant officers.

57.    The above described conduct is part of a long running pattern in the District of Columbia and Prince George's County to fail to discipline officers who act wrongfully.

58.    As a further example, a paraplegic in a wheelchair refused to let MPD officers, allegedly investigating a murder, in his apartment because they did not have a warrant.  They forced their way in and turned over the paraplegic's wheelchair causing him to fall to the floor and injure himself.  They then dragged him down the landing to the stairs and handcuffed him behind his back, dragged him down the stairs, placed him in his wheelchair with no support causing him to

fall to the sidewalk.  He was charged with APO.  The charge was dropped, and based on information and belief none of the officers were disciplined.

## COUNT I
(42 U.S.C. 1983-4th Amendment Excess Force)

59.    The allegations contained in paragraphs 1 through 58 of the Complaint are incorporated by reference as though fully set forth herein.

60.    The actions of the defendant officers in beating, kicking, banging Jalloh's head on the highway, and dragging him across the road while he was handcuffed, brutalizing an unarmed and unresisting arrestee who posed no physical threat to them was shocking to the conscience, malicious, and assaultive, and constituted a violation of Jalloh's right to be free of unreasonable seizure under the Fourth Amendment to the Constitution.

61.    The District of Columbia in failing to discipline the MPD officers involved contributed to an ongoing policy of not disciplining officers for their wrongful acts thereby enabling and creating a culture of police misconduct permissiveness.

62.    As a result of the wrongful acts of the defendant officers, Jalloh suffered broken ribs, a concussion, damaged and broken teeth requiring expensive and ongoing dental work, and has caused him to suffer from post-traumatic stress disorder, and other mental pain and anguish.

WHEREFORE, the defendants are jointly and severally liable to Jalloh in the amount of $5,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages.

## COUNT II
(4th Amendment-Failure To Provide Medical Assistance)

63.    The allegations contained in paragraphs 1 through 62 of the Complaint are incorporated by reference as though fully set forth herein.

64.    At no time during and after the beating Plaintiff received at the hands of D.C. officers Underwood, Tridico, Kimball, and Prince George's County officer Miller, did any of them, including Prince George's County officer Anderson offer medical assistance to Jalloh even though Jalloh had been badly beaten and was obviously in need of it.

65.    Each and every officer present had a duty to see to it that such assistance was provided.

66.    As such, Jalloh's 4th Amendment right to be free of unreasonable seizure and protection from such unreasonable seizure and to receive  medical assistance.

67.    The failure of all the defendant officers to provide medical assistance to Jalloh, who had been badly beaten, shows a reckless and wanton disregard and reckless indifference to Jalloh's wellbeing, and shocks the conscience.

68.    The failure of the District of Columbia to discipline the officers involved makes it equally culpable and an aider abettor of wrong doing by police officers.

11

WHEREFORE, the defendants are jointly and severally liable to Jalloh in the amount of $5,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages.

## COUNT III
(4th Amendment-Failure to Intervene)

69.     The allegations contained in paragraphs 1 through 68 of the Complaint are incorporated by reference as though fully set forth herein.

70.     At no time did any officer present at the scene intervene to stop the beating being administered at various times by officers Underwood, Tridico, Kimball and Miller.

71.     The failure to intervene by any officer present at any time, including officer Anderson, to intervene and protect Jalloh who was helpless and in their custody, from a horrific beating, was a violation of Jalloh's 4th Amendment right to be free from unreasonable reasonable seizure.

72.     The failure to intervene caused Jalloh to suffer serious injuries both physically and mentally, pain, suffering, and mental anguish from which he still suffers today.

WHEREFORE, the defendants are jointly and severally liable to Jalloh in the amount of $5,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages.

## COUNT IV
12

(4th Amendment-Malicious Prosecution)

73.    The allegations contained in paragraphs 1 through 72 of the Complaint are incorporated by reference as though fully set forth herein.

74.    Jalloh was falsely charged with Assaulting a Police Officer While Armed, Fleeing Arrest, and Reckless Driving.

75.    Every single charge placed upon Jalloh by Underwood was false and known to be false by each and every defendant and as such they were complicit in the filing of these charges.

76.    These false charges were known to known to be false by each and every defendant, and were maliciously placed upon Jalloh.

77.    Each and every charge falsely placed upon Jalloh was dismissed.

78.    As a result of these false and malicious charges, Jalloh was placed in fear not only of his safety, but his freedom.

79.    As a result of these knowingly false charges, Mr. Jalloh was jailed and deprived of his liberty.

80.    As a result, Jalloh suffered psychological pain, anguish, and psychological trauma and fear that persists to this day.

WHEREFORE, the defendants are jointly and severally liable to Jalloh in the amount of $5,000,000.00 in compensatory damages and $5,000,000.00 in punitive damages.

## **JURY DEMAND**

Trial by jury is demanded on all issues set forth in the Complaint.

Respectfully submitted,

/s/DONALD F. ROSENDORF
Donald F. Rosendorf DCB 54254
1513 King Street
Alexandria, VA 22314
703-838-7770 (ph)
703-548-9756 (fax)
drosendor@aol.com

/s/ PATRICK CHRISTMAS
Patrick Christmas DCB 85985
8401 Colesville Road
Silver Spring, MD 20910
301-589-3009 (ph)
301-589-1909 (fax)
pchristmas@christmaslaw.com

14