**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

USMAN JALLOH,

*Plaintiff*,

v.

ROBERT UNDERWOOD *et al.*,

*Defendants*.

Civil Action No. 16-1613 (TJK)

## MEMORANDUM OPINION

On August 8, 2016, Plaintiff Usman Jalloh filed this case against Robert Underwood, Philip Tridico, and Arthur Kimball, police officers employed by the District of Columbia's Metropolitan Police Department, as well as Sean Miller and Thomas Anderson, police officers employed by the Prince George's County Police Department, alleging violations of his rights pursuant to 42 U.S.C. § 1983 and the Fourth Amendment of the U.S. Constitution. On June 7, 2017, Defendants Miller and Anderson moved to dismiss the case for improper venue, or in the alternative, to transfer the case to the District of Maryland, on the grounds that some of the alleged events occurred in Maryland.

### I. Background

The allegations in the Complaint are presumed to be true for purposes of this motion. Jalloh, a resident of Maryland, alleges that on the afternoon of November 13, 2013, he was sitting in his truck, parked on a District of Columbia street, when Underwood approached him and told him that he could not park there. ECF No. 1 ("Compl.") ¶¶ 2, 10-11, 15. When Jalloh drove away, Underwood and Tridico began to follow him. *Id.* ¶ 17. Tridico told his supervisor on his police radio that Jalloh had intentionally struck Underwood while pulling away from the

parking spot, and that Underwood was bleeding. *Id.* ¶¶ 18-19. The officers continued to follow Jalloh into Maryland. *Id.* ¶¶ 16-18, 20, 25-26. Jalloh pulled over, and Underwood got out of his vehicle and approached Jalloh's truck, pointing his gun at Jalloh. *Id.* ¶¶ 27-28. Anderson and Miller then arrived at the scene. *Id*. ¶ 29. Underwood pulled Jalloh out of the truck, and Underwood, Tridico, Kimball, and Miller punched and kicked Jalloh. *Id.* ¶¶ 30-34. None of the officers provided medical assistance or otherwise intervened during the beating. *Id.* ¶¶ 35, 38-39. In fact, Jalloh subsequently required medical attention. *Id.* ¶¶ 40-41, 47. A few weeks later, Jalloh learned that there was a warrant for his arrest in the District of Columbia, and he turned himself in. *Id.* ¶¶ 48-49. Jalloh alleges he was falsely charged with, among other things, assaulting a police officer while armed. *Id.* ¶¶ 52-53, 74. The charges were dismissed approximately 18 months later. *Id.* ¶ 55.

Jalloh contends that the beating that he suffered constituted excessive force that violated 42 U.S.C. § 1983 and the Fourth Amendment. *Id.* ¶¶ 59-62. He also asserts that the officers' failure to provide medical assistance and to intervene while he was being beaten violated the Fourth Amendment. *Id.* ¶¶ 63-72. Finally, he asserts that the subsequent prosecution for assaulting an officer and evading arrest was malicious and violated the Fourth Amendment. *Id.* ¶¶ 73-80.

On June 7, 2017, Miller and Anderson, the two Prince George's County police officers sued in this case (the "Moving Defendants") moved to dismiss the case for improper venue or, if venue is proper, to transfer it to the District of Maryland in the interest of convenience and justice. ECF No. 18 ("Transfer Mot."). Jalloh opposed transfer, *see* ECF No. 25, as did Underwood, *see* ECF No. 24.

## II. Legal Standard

A case filed in an improper venue shall be dismissed or, if it is in the interest of justice, transferred to a proper venue. 28 U.S.C. § 1406(a); *see also* Fed. R. Civ. P. 12(b)(3) (providing that party may assert improper venue by motion). In considering a Rule 12(b)(3) motion, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citing *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002)). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). To prevail on a motion to dismiss for improper venue, however, "the defendant must present facts that will defeat the plaintiff's assertion of venue." *Khalil v. L–3 Commc'ns Titan Grp.,* 656 F. Supp. 2d 134, 135 (D.D.C. 2009). Unless there are "pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." *Williams v. GEICO Corp*., 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

## III. Analysis

### A. Dismissal for Improper Venue under § 1406

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Moving Defendants allege that the case must be dismissed for improper venue under 28 U.S.C. § 1406(a) because "none of the operative events" giving rise to Jalloh's claims occurred in the District of Columbia. Transfer Mot. at 4. The Court disagrees. On the undisputed record here, a "substantial part" of the events that gave rise to Jalloh's claims took place in the District of Columbia, including: (1)

the initial encounter between Jalloh and Underwood; (2) Jalloh's alleged assault of Underwood for which Jalloh was later prosecuted; (3) Underwood and Tridico's pursuit of Jalloh, which led to their alleged assault of him; and (4) Jalloh's prosecution for assaulting Underwood. Compl. ¶¶ 9-58; Transfer Mot. at 1-3.

Moving Defendants also argue that "a substantial part" of the alleged events giving rise to Jalloh's claims occurred in Maryland, given that Jalloh was allegedly assaulted by the officers there. *See* Tranfer Mot. at 3-4. The Court agrees. However, this does not mean that venue is not *also* proper in the District of Columbia. Courts have repeatedly explained that even if a substantial part of the events in a case took place in one district, a plaintiff may still file suit in another district if a substantial part of the events *also* took place there. *See Perlmutter v. Varone,* 59 F. Supp. 3d 107, 110 (D.D.C. 2014) ("The 'substantial part' requirement does not mean that plaintiffs may only bring suit in a district where every event that supports their claims occurred, but plaintiffs must show that a considerable portion of the events took place in their chosen forum."); Moreover, "[n]othing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the *most substantial* portion of the relevant events occurred, nor does it require a plaintiff to establish that every event that supports an element of a claim occurred in the district where venue is sought." *Douglas v. Chariots for Hire*, 918 F. Supp. 2d 24, 28-29 (D.D.C. 2013) (quoting *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006)). Because a substantial part of the events giving rise to Jalloh's claims took place in the District of Columbia, venue is proper under 28 U.S.C. § 1391(b)(2).

### B. Transfer of Venue Under § 1404

Moving Defendants also argue that, even if the case is properly filed in the District of Columbia, it should be transferred to the District of Maryland. *See* Transfer Mot. at 4-7. Even if

a case is filed in a proper venue, it may be transferred "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The movant first must show that the plaintiff originally could have brought the case in the transferee court. *Treppel v. Reason*, 793 F. Supp. 2d 429, 435 (D.D.C. 2011). The movant also must show that "considerations of convenience and the interest of justice weigh in favor of transfer." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 65 (D.D.C. 2003). Under this inquiry, the court weighs case-specific factors "related to both the public and private interests at stake." *Douglas*, 918 F. Supp. 2d at 31 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The moving party bears the burden to show decisively that transfer is proper. *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.* ("*Thayer*"), 196 F. Supp. 2d 21, 31 (D.D.C. 2002) ("The moving party bears a heavy burden of establishing that plaintiffs' choice of forum is inappropriate." (internal quotation marks omitted)); *see also Gross v. Owen*, 221 F.2d 94, 95 (D.C. Cir. 1955) ("It is almost a truism that a plaintiff's choice of a forum will rarely be disturbed . . . unless the balance of convenience is strongly in favor of the defendant.").

The Court cannot agree that the case should be transferred to the District of Maryland. To be sure, because Jalloh was allegedly assaulted by officers in Maryland, it appears that "a substantial part" of the alleged events occurred there. Therefore, Jalloh could have properly brought the case there under 28 U.S.C. § 1391(b)(2). However, as explained below, the balance of private-interest and public-interest factors does not weigh in favor of transfer.

#### 1. Private-Interest Factors

The private-interest factors the Court may consider include: (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claims arose; (4) the convenience of

the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

The first two factors—each party's respective choice of forum—weigh against transfer. It is well established that a plaintiff's choice of forum is entitled to deference. *Trout Unlimited*, 944 F. Supp. at 17. That deference is entitled to less weight when (1) the forum has "no meaningful ties to the controversy," or (2) the transferee forum has "substantial ties" to the plaintiff, such as when the plaintiff resides in the transferee forum. *See id.*; *Onyeneho v. Allstate Ins. Co.*, 466 F. Supp. 2d 1, 5 (D.D.C. 2006). In this case, Jalloh's choice of forum is entitled to slightly less deference because he resides in the District of Maryland, albeit in Bladensburg, quite near the District of Columbia. *See* ECF No. 1 at 2. But the deference is still substantial because, as described above, the District of Columbia has meaningful ties to this controversy. In contrast, the defendant's choice of forum ordinarily does not receive deference. *Mahoney v. Eli Lilly & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008). Moving Defendants have not shown that this is an extraordinary case where their choice of forum should receive deference, and so this factor weighs against transfer.

The third factor weighs slightly in favor of transfer. Claims "arise" under § 1404(a) "where most of the significant events giving rise to the claims occurred." *Douglas*, 918 F. Supp. 2d at 32. In this case, there is no doubt that significant events occurred in the District of Columbia, as described above. On the other hand, the core event that gave rise to three of the four claims asserted by Jalloh—his alleged beating by the officers—took place in Maryland. As such, this factor tilts in favor of transfer, but only slightly given the significant events that occurred in the District of Columbia.

Finally, as Moving Defendants concede, Transfer Mot. at 7, the remaining factors—the convenience of the parties and witnesses, and the ease of access to sources of proof—do not weigh in either direction due to the proximity of the two jurisdictions at issue. *See Onyeneho*, 466 F. Supp. 2d at 4 ("[B]ecause Maryland and the District of Columbia are in close proximity, the convenience of the parties would not be greatly affected whether this action remains in the District of Columbia or is transferred."); *Liban v. Churchey Group II, L.L.C.*, 305 F. Supp. 2d 136, 142 (D.D.C. 2004) (noting that the "close proximity" of the District of Columbia and Maryland minimizes inconvenience).

**2. Public-Interest Factors**

The public-interest factors the Court can weigh include: (1) the transferee court's familiarity with the governing laws; (2) the relative congestion of the calendars of the transferor and transferee courts; and (3) the local interest in having local controversies decided at home. *Trout Unlimited*, 944 F. Supp. at 16. Each of these factors is neutral here.

The first factor weighs neither for nor against transfer because Jalloh asserts constitutional claims. "[A] transferee federal court is competent to decide federal issues correctly." *Liban*, 305 F. Supp. 2d at 143. Indeed, Moving Defendants concede this factor is neutral. Transfer Mot. at 8. Moving Defendants concede that the second factor is neutral as well, and they cite no data to suggest that one docket is significantly more or less congested than the other. *See id.* (citing *Schmidt v. Am. Institute of Physics*, 322 F. Supp. 2d 28, 35 (D.D.C. 2004)).

Moving Defendants argue that the third factor—the local interest in having local controversies decided at home—cuts in favor of transfer. *Id.* at 8-9. The Court does not agree. Undoubtedly, when a case "[touches] the affairs of many persons" in a district, "there is reason

for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only." *Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 57 (D.D.C. 2012) (alteration in original). But when both districts have strong, roughly equal interests in deciding a controversy, this factor weighs neither for nor against transfer. *See Douglas*, 918 F. Supp. 2d at 34 (concluding that local interest factor did not weigh heavily for or against transfer because both districts had strong interests in resolving case against company that conducted business within their borders). That is the case here. Both the District of Columbia and Maryland communities have equally strong interests in adjudicating claims of wrongdoing against their police officers. To the extent that Maryland's interest may be considered slightly greater because the alleged assault occurred there, its interest is counterbalanced by the District of Columbia's related interest in ensuring the integrity of its justice system, which is implicated because Jalloh claims to have been falsely prosecuted here.

Undaunted, Moving Defendants argue that Maryland has a stronger interest, and cite three cases in which courts in this District transferred cases, in part because local interests heavily favored transfer. *See* Transfer Mot. at 8. But those cases are easily distinguishable. In each of them, the District of Columbia was relatively unaffected by the events at issue, and the transferee districts were heavily impacted. Thus, the other district's interests dramatically outweighed the District of Columbia's. *See Onyeneho*, 466 F. Supp. 2d at 4-5 (transferring case to the District of Maryland because of its interest in regulating treatment of employees who worked there almost exclusively); *Liban*, 305 F. Supp. 2d at 143 (transferring case to the District of Maryland because of its interest in resolving Fair Housing Act claims against real estate company incorporated there and related to property located there); *Trout Unlimited*, 944 F. Supp. at 19-20 (transferring case to the District of Colorado because of its interest related to a decision

made by a federal official in Colorado impacting the forests, water systems, wildlife, and people there).

*  *  *

In sum, the private and public factors for and against transfer balance approximately equally. Jalloh's choice of forum weighs against transfer, and the location of where the claims arose weighs slightly in favor. The other factors are neutral. Given this balance, Moving Defendants have not carried their "heavy burden" to show decisively that the interests of convenience and justice favor transfer. *Thayer*, 196 F. Supp. 2d at 31.

## IV. Conclusion

For the reasons set forth above, the Motion to Dismiss or Transfer, ECF No. 18, is **DENIED**. An appropriate Order shall accompany this Memorandum Opinion.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 2, 2018